Good morning, and may it please the court. My name is Mike Weinstein, and I represent the petitioner Nelson Hernandez. Your Honors, I'm here today because 10 years ago the fairness of Hernandez's trial was compromised when the trial court permitted its bailiff to testify to an un-Mirandi statement that Hernandez supposedly made. That statement became a central part of the prosecution's case, and it had a devastating effect on Hernandez's defense. I'd like to underscore three separate things for the court today. The first is that the state court decision was unreasonable under 2254-D1, because in denying Hernandez's Miranda claim, the state court failed to apply the clear mandate of Rhode Island v. Innis and also ignored the context in which Deputy Moore's question was asked. The second thing is that the decision is also unreasonable under 2254-D2, because the 4-2 hearing was hastily conducted by a biased judge who did not allow Hernandez an opportunity to fully develop the factual basis of this claim. And lastly, in light of the prosecutor's closing arguments, the juror's request for a readback of Deputy Moore's testimony, the length of deliberations, and the relative strengths and themes of both sides' cases, I think there's little doubt that this error had a substantial and injurious effect on Hernandez's verdict. The fundamental issue that you have to persuade us about is that this was an interrogation. What is it about this encounter in the stairwell that turned it into an interrogation within constitutional framework? Well, we're looking to see if the words that the deputy used were reasonably likely to elicit an incriminating response. And I think if you look at all the circumstances of this case, the answer is yes. But, Castle, here's my problem with your construct. Let's assume that the initial question, are you going to testify, was a custodial interrogation moment. It was a single question that could be answered with yes or no. And then a period of time passed where the deputy walked upstairs with your client and then, as I understand it, your client then reinitiated the conversation himself. So how does that fact play into our analysis of whether the ultimate incriminating statement, which happened later, was the product of improper custodial interrogation? Well, what the Court of Appeal did was it parsed it out that way and said it was two different conversations. And I think that's actually an unreasonable way to read the record, because this entire incident occurred in one stairwell. The only movement was from the bottom of the stairs to the top of the stairs. And when they were at the bottom of the stairs, the deputy asked Hernandez a question that was directly related to the trial. And when they get to the top of the stairs, they continue talking about the trial. Well, that sort of fudges it, though, because they continued talking about it. Was your client reinitiating the conversation, or at least that why isn't that a permissible reading of what happened? Well, because the only break in the conversation was a 45-second pause. The location of this conversation remained the same, the subject matter remained the same. So I think in light of that, this really was just one conversation about the trial. And to get at your question, Hernandez's statement wasn't directly in response, but I still think that Deputy Moore should have known that if he asked Hernandez a question that was directly related to his defense, that there was a reasonable likelihood that Hernandez would respond in an incriminating manner. And he did just that about 45 seconds later. I guess my difficulty is with our standard of review, because if we were starting from scratch, what you say makes a lot of sense, but we have to look at it through this deferential lens as to whether a reasonable jurist could view it differently than what you're saying. And that's where I'm stuck, I guess. Well, I understand that. And you're correct that there is an added layer of deference to this case. But there are two reasons under 2254 D-1 and one main reason under 2254 D-2 why this Court can review the claim of De Novo. As I was saying, Rhode Island v. Innis is very clear. The primary focus of this analysis is supposed to be on the defendant's perception and not the officer's subjective intent. And if you look at the California Court of Appeals decision, they did the exact opposite. They focused on Deputy Moore's intent and his reaction and didn't even mention Hernandez's perception. So I think that's one reason why the State Court decision was unreasonable under 2254 D-1. Another reason is because if you examine the underlying reasoning of the State Court's decision, it becomes clear that they ignored the context in which this question was asked. We have a 19-year-old kid on trial in a first-degree murder case. He is facing a possible life sentence. The State's star witness has just testified against him and over the course of the past two days, repeatedly identified him as a shooter. And then the deputy takes him from the crowded courtroom to a secluded stairwell and asks him if he's going to testify. Well, Hernandez's interpretation of that question was very reasonable. And he did what I think most people's natural tendency would be, which is to talk about their defense, to talk about whether they're innocent or guilty. And the State Court said that, and I'll quote this, the bailiff's question did not suggest any response relating to the facts of his case at all. I think that if you look at the context in which this question was asked, that's exactly what it called for. And a reasonable person would interpret it the same way that Hernandez did, which was essentially as, this is what the State has to say. What do you have to say? So those are the two reasons why under 2254 D-1 the State Court decision was unreasonable. But we can also get to de novo review if we analyze this case under the lens of 2254 D-2. And we look at the 402 hearing. Even the California Court of Appeal observed that 24 hours to hold this hearing was a very short time. And then you look at the judge. I think that if you're not, I think that at the very least there's the appearance of bias here. You have a judge who had worked with his bailiff for two years. And he made comments before the hearing that indicated that he was going to have difficulty not referencing his preexisting relationship with the defendant when he was analyzing his credibility. Then you also have the trial court not allowing Hernandez to call appropriate witnesses in this instance. He could have called the clerk. He could have called the reporter. He could have called the detective that overheard the conversation. And the trial court didn't allow him to do that even though those people were right there. But going back to my, what I was saying about the trial court's bias. Were any of those witnesses, so-called witnesses, within earshot of the holding area where this conversation took place? They were not within earshot. But he spoke to them afterwards, didn't he? Isn't that the basis of it? Deputy Moore spoke to these other individuals right after this exchange had taken place? Exactly. And I want to make sure one thing is clear, is that we're not just concerned about whether the statement did or did not occur. We're concerned about the underlying credibility of Deputy Moore. And I actually think that there's a substantial question about his intent in this case. And that's because his professed reason for asking this question was because he was curious about the trial schedule, about how long the trial was going to be. But this was a guy who had been a bailiff for three years. You would think that he would know that if you have a question about that subject matter, you talk to the judge or the clerk or the attorneys, but you do not talk to the defendant about it. So I think there's a real question about what his intent was. And those witnesses may have been able to provide some sort of insight into that. Counsel, you're down to about a minute and a half. You may want to reserve. Exactly. I was just going to ask you. May I reserve the rest of my time? Yes, certainly. Absolutely. Thank you. Good morning, Your Honors. Deputy Attorney General Tenaz Kapindijat on behalf of the warden. On direct appeal, the court of appeal here reasonably applied the standards set forth in Innis, Rhode Island v. Innis. When it found that appellants' Miranda rights had not been violated because the statements were not the product of an interrogation. Counsel, I have a very fundamental question here about our standard of review. And when I was talking with opposing counsel, I assumed that AEDPA would apply. But I'm troubled by the following. In the opening brief, and again today, counsel argues at some length why AEDPA does not apply here. There are at least two different theories as to why it should not apply. And as I read the state's brief, that argument was never discussed in your brief head on. So why shouldn't we consider that a waiver of the argument that AEDPA applies and apply de novo review here? Yes, Your Honor. We do apologize. I'm not sure as to why we failed to address it. Well, but you agree with me that you did fail to address it. We did. And do you agree with me that it is typically an argument that is not made in the party's first opportunity to make that argument by brief that it's considered waived? We do agree with the fact that we did not address it in the Ninth Circuit appellee's brief. However, we did address every single one of these issues in the district court's answer that we filed. Why does that make any difference? Because parties often abandon arguments that they made unsuccessfully or successfully in the district court. Why wouldn't the typical waiver apply here? I mean, the opening brief clearly made the argument that AEDPA doesn't apply. Please use de novo review. And you guys said not a word in response to that. And we do apologize. Again, we made all these arguments before the district court. I don't want an apology. I want a reasoned analysis as to why we don't have to, therefore, apply de novo review, which was asked for and not challenged here by you. We would argue that even if you were to apply de novo review, we're not conceding that de novo review should be applied. However, even if you apply de novo review, it doesn't matter. Because state procedure is not a federal question. State procedure, in this circumstance, the granting of a continuance is not something that, I'm sorry, it squarely falls within state law. And, therefore, it's not something that would be reviewed. A violation of Miranda is a federal question, isn't it? A violation of Miranda. They're arguing as to the continuance as far as the procedure that led to the interrogation. Well, they're also arguing on the merits that it was improper to allow Detective Moore to, or Deputy Moore, excuse me, to testify as to the responses that were given to him by his question to the defendant during the course of the trial. That's a federal question, isn't it? I'm sorry, can you? Is that a federal question, whether Miranda was violated? Whether Miranda was violated, yes. Okay. So on de novo review, if we have de novo review, what is your best argument that this question and answer sequence was not a violation of Miranda? Okay. First of all, under Taylor v. Maddox, in order for this Court to look at it as far as it being an interrogation, it would have to find that any court of appeal found it unreasonable. That's assuming HIPAA applies. I'm asking you about de novo review. What's your best argument that this is not a violation of Miranda? The closest case, all the cases that appellant argues in their briefing addresses inculpatory evidence, where we have appellant who's been, the interrogation is where they have been presented with co-defendant's confessions. Here, we don't have any of that situation. I know that the argument was made that as far as there being this interrogation, there was a minute lapse, approximately 45 seconds to a minute lapse. The initial question occurred at the courtroom where bailiff asked the question, as your Honor pointed out, and then the appellant then raises the question himself at the top of the stairwell. So you think that 45 seconds and a few steps upward render it sufficiently attenuated? I think if we're thinking about the entire, it's probably a 45-minute walk from the courtroom and to the... You just said 45 seconds, which is what your opposing counsel also said, so I'm just... The gap between one question to the next question was 45 seconds. I'm saying that 45 seconds to a minute in a four-minute walk is a great deal of amount. If we were to sit here in silence for 45 seconds, that's a great deal of... You'd be appreciative, probably. That 45 seconds would be an extremely long amount of time to have it be quiet. So for appellant to have started the second set of questioning, which the district court also pointed out that the court of appeal gave appellant the benefit of saying, okay, fine, we'll assume Bailiff started the conversation. However, the district court said, no, no, you took the stand at the 402 hearing and you testified, you started the conversation. So appellant, even at the trial court record shows, appellant started the conversation. He testified to starting the conversation. Well, he restarted a conversation at best, because the initial question was a question from the deputy to him, and the Supreme Court's test is whether the question is reasonably expected to elicit something that could be incriminating. It doesn't have to be, did you do it, for it to be Miranda worthy, if you will. And I think the court of appeal best laid it out when it stated that here we're looking at appellant. If we look at appellant, initially the court said, here's the appellant, he starts this conversation. Or even if he doesn't start the conversation, the bailiff started the conversation. The bailiff testified to both versions. So he'd already impeached himself. So the witnesses that the appellant wanted to call before the court, the court reporter, the court clerk, and the investigating officer, none of them were in the room when the bailiff originally asked the question going up the stairwell. They were all, they all overheard what the bailiff stated, and the court of appeal said, we don't care what the bailiff specifically said. The point was, is whether or not he placed appellant there. And both versions that bailiff testified to placed appellant there. This argument that appellant was susceptible because he was 19 years old, that's a 19-year-old man. He, they, both counts. Mr. Weinstein's argument that the question, are you going to testify, directed to the defendant rather than to defense attorneys, was really elicited, it's a way of saying, what's your story on this, after the witness has testified against him? It's not just whether the case will be a little bit longer or a little bit shorter. Isn't there some validity to what Mr. Weinstein says? I think if we look at it in the entire context of how the question was asked, I think the court of appeal reasonably applied the case law. Reasonably applied is a 2254-D1 test. Please put that out of your mind. Put the word reasonably in the bottom drawer for a moment. Tell us why Mr. Weinstein's analysis isn't more probable. As far as what the question sought to elicit. The closest case here that we have that the facts are similar is Moreno Flores, where we have an individual who's sitting in a car with a detective who's just been arrested, and the detective says to him, you know, you're in a lot of trouble. There was 600 pounds of cocaine found. There's no comment made the next morning. A defendant gets in the car again and says, you know what, in states that he found that it wasn't 600 pounds of cocaine, it was 600 pounds of marijuana. Here it's a neutral question, saying are you going to, asking the question that the bailiff did, it was a neutral question. That's the interpretation you put on the question. The question we have to decide is, is that the only reasonable interpretation to put on the question? And if from the perception of the defendant, a reasonable interpretation would be, what's your story? I think a reasonable defendant, appellant's argument is if he's a 19-year-old kid. We have someone who's been in custody for a while now, someone who's been in and out of the juvenile system. He's quite aware of, you know, being in custody and the ramifications of it. Look at the answer that Mr. Hernandez gave. He didn't say he was going to testify or not testify. He said he had an alibi, but his attorney did not want him to use it. So it had to do with his case, with his case defense, not whether he was going to testify or not. But that's not an incriminating response, and I don't think that that would have elicited an incriminating response under these circumstances. Because the courts have held that we look to see the susceptibility. It certainly would indicate that his alibi wasn't worth a hill of beans. But just because appellant volunteered the information doesn't all of a sudden make it a violation of Miranda. Because his response could have been yes, no, or a maybe. Did the bailiff testify that Hernandez said he had an alibi, but that his attorney did not want him to use it? No, he did not. In any event, Your Honors, even if you do review the facts here de novo, we would point out that there is no error here. Because at the end of the day, there was so much testimony, there was so much evidence against appellant himself. We had two identifying, we had two identifications from two different witnesses who were independent. We have proof of flight, we have proof of motive, and we also have proof of guilt of consciousness. First of all, West, who was the witness who testified against him initially, testified that appellant spoke to her for two minutes. She saw his face, he had no hood on, he was walking in a well-lit area, asking her questions. They arrived at the car, one of them opens the door, whoever it is, based upon the bailiff's own impeaching testimony. Someone opens the door, and then appellant continues to question the victim for five minutes. Where West even testified, she was scared of appellant, she was scared of the situation. Then we have a second independent witness. Counsel, isn't Deputy Moore really the only neutral witness in the whole case, though? And doesn't the jury deliberation notes and so forth, doesn't that all suggest that his testimony was in fact pivotal to the verdict? I don't believe so, Your Honor. I believe, yes, first of all, bailiff was not the only neutral. I believe Alcantara was also, Alcantara was a neutral witness. He was just a passenger in a car driving by, so he had no vested interest as far as the victim went. And he testified that not only did he see the appellant, but that appellant pointed a gun at him, he ducked, the driver continued on, he came back, gave a description to the officers, and then went and picked appellant out of a six-pack lineup. So he is the most, I would say, damning witness as far as being a neutral witness who also identified appellant at the scene. I don't think bailiff's really short testimony in a three-day trial. Thank you, Counsel. Our questions have taken you way over time. Sorry, Your Honors. Mr. Weinstein, you have some reserve time. Thank you, Your Honors. Your Honors, obviously, if you want to construe the government's failure to address our 2255 case, we would be happy and invite the Court to construe that as a waiver. But we don't even have to get there for the reason we stated in our brief. And when we start talking about whether this was an interrogation under Rhode Island v. Innis, I think that the case that is more on point is actually United States v. Barnes. Because there you have the officers confronting the defendant with the evidence against him and then asking him, what do you think about this? And as we've been talking about today, that is a very reasonable interpretation of Deputy Moore's question, are you going to testify, especially after Hernandez was just confronted with a state star witness. The only thing I the only other thing I would like to add is that when we're analyzing prejudice in a Miranda violation, Gantt v. Woodford, Pope v. Zenon, they both say that it's not a question of whether there's sufficient evidence to support the conviction. You're looking to see if there's a substantial and injurious effect. And in looking at that, you need to look to see how that error affected the defendant's theory. And in this case, Hernandez's theory was I couldn't have shot this person because I was 100 miles away. And Deputy Moore's testimony placed him at the crime scene. So it directly undermined his defense theory. And in light of that and the other indicia that the Court has already brought up, I think that it's very clear that there was actually a prejudicial effect in this case. Counsel, I have one passage. You've relied pretty heavily on Rhode Island v. Innis. And on page 301 of the U.S. report's conclusion part, the term interrogation under Miranda refers not only to express those normally attendant to arrest and custody that the police should know. What do you suppose the Court means by that? This is a custody situation, obviously. Right, but I don't think this is actually a normal question that's asked. And the reason I say that is because when I first got this case, I did a lot of research. And I was looking for a similar fact pattern. And I couldn't find a similar fact pattern. And what occurred to me is the reason why there aren't a lot of cases where you have a bailiff asking a defendant if he's going to testify in the middle of a criminal trial is because it's a completely inappropriate question for the bailiff to ask. So normally attendant might be things like, do you need to go to the restroom now or something like that? Exactly, yeah. Are you thirsty? What's your date of birth? What's your name? Can I see your driver's license? Those are the questions that are normally attendant to arrest and custody. Not, let me ask you a question that goes directly to the heart of your defense. Who asked for the testimony here? I can't remember. Was it the prosecution or the judge? The prosecution. All right. Very well. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Bea